IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

    v.                CRIMINAL NO. 04-2 ERIE

KELLY ELIZABETH MUNNINGS

                RESENTENCING

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, August 2, 2005.

APPEARANCES:
    MARSHALL J. PICCININI, Assistant United States
    Attorney, appearing on behalf of the Government.

    STEPHEN M. MISKO, Esquire, appearing on behalf

of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1         P R O C E E D I N G S

2

3         (Whereupon, the proceedings began at 10:58 a.m., on

4 Tuesday, August 2, 2005, in Courtroom C.)

5

6         THE COURT: This is the time set for resentencing at

7 Criminal No. 04-2 Erie. As I remember in connection with the

8 previous sentence, Mr. Misko, there had been an objection that

9 had been filed by you with respect to the enhancement to

10 possession of a firearm under Section 2D1.1(b)(1), is that

11 right?

12         MR. MISKO: Yes, your Honor.

13         THE COURT: All right. I assume the same objection

14   you had before obtains today, is that right?

15            MR. MISKO: Yes, your Honor.

16            THE COURT: Is there anything else?

17            MR. MISKO: The only other factor that were not --

18   that is present today is the fact there are two cases pending

19   for Ms. Munnings in Crawford County.

20            THE COURT: I'm sorry?

21            MR. MISKO: There are two pending cases in Crawford

22   County. Ms. Munnings indicates that she's going to be

23   sentenced on August 8th. I talked with Dave Schroeder, who is

24   handling one of the cases, he indicates to me that the two

25   cases in Crawford County are looking to run concurrent with

3

1   each other. However, the District Attorney's office is looking

2   for the cases to run consecutive to any time that this court

3   gives. Based on, and I haven't have looked at the guideline

4   because it's not my case, but based on my review of Ms.

5   Munnings' criminal history, it looks to be that the guideline

6   range is anywhere from 3 to 14 months, i.e., 3 to 6 months or

7   14 to 28 months, whatever the judge wants to give in Crawford

8  County. So I'd like to bring that to the court's attention in

9  sentencing Ms. Munnings today.

10    THE COURT: She is being sentenced on two different

11 state charges?

12    MR. MISKO: That's correct. It's essentially

13 similar conduct as to what she's been indicted for. I believe

14 there were some suppression issues or writ of habeas in

15 reference to a double jeopardy issue, but those were denied by

16 the court. Therefore, there is a negotiated plea. But there

17 is no agreement as to time. That's going to be up to Judge

18 Vardaro in the Court of Common Pleas of Crawford County.

19 Again, that time is looking to run consecutive to any time that

20 this court gives.

21    THE COURT: All right, let me just indicate for the

22 record, then, indicate that for the reasons previously set

23 forth on the record at the original sentence on November 22,

24 2004, which I incorporate herein by reference as is fully set

25 forth, I find that the enhancement for possession of a firearm

1  is appropriate.

2       Consequently, I make the following findings. The

3   total offense level applicable is 31. With a criminal history

4   category of III. Statutory provision as to custody not less

5   than 10 years to life. Guidelines 135 to 168. Statutory

6   provision as to probation ineligible. Similarly ineligible

7   under the guidelines. Statutory provision as to supervised

8   release at least five years. Guidelines five years. Statutory

9   provision as to a fine $4 million. The guidelines $15,000 to

10  $150,000. Restitution is inapplicable under both. And a

11  special assessment of $100 would apply both with respect to the

12  statutory and guideline provisions.

13      And to the extent I failed to mention it, it is of

14  course now the lay of the land that is post Booker, I recognize

15  that the sentencing guidelines are now advisory as opposed to

16  mandatory. Okay. Is there anything you want to say or is

17  there anything your client wants to say before I resentence?

18      MR. MISKO: Your Honor, the only thing I want to say

19  is in reference to 18 U.S.C. 3553, the factors under subsection

20  (a)(1)(2), having to do with the appropriateness of the

21  sentence, I would ask the court to sentence Ms. Munnings to the

22  120 months as required under 841(b)(1)(a). The reason being it

23  would reflect the seriousness of the offense, and also promote

24  respect for the law, and be just punishment. The reason being

25  that people similarly situated in the Western District of

5

1  Pennsylvania are receiving the statutory mandatory minimum

2  amount of 120 months, notwithstanding any proviso for upward or

3  downward departures.

4         Clearly Ms. Munnings is not eligible for any

5  downward departure pursuant to 3553(e) or (f), and we'd ask she

6  be sentenced to 120 months based upon the fact that she was

7  more assisting in the manufacture of methamphetamine than

8  anything else. Dan Hines essentially taught her what to do and

9  brought her in for her assistance, she was obviously hooked on

10 methamphetamine. She was a user, she's an admitted user. We

11 would ask that the court recommend the intensive drug program

12 for her. Clearly there is no excuse for her conduct in this

13 case. But being a helper, as opposed to somebody who was

14 manufacturing and distributing methamphetamine, should put her

15 in a class of 120 months versus any upward area of 135 to 168

16 months.

17      We feel a sentence of 120 months is appropriate.

18  Ten years of her life is appropriate for what she has done.

19  Notwithstanding any consecutive time she may be given by the

20  Court of Common Pleas for Crawford County.

21      In addition, we understand the court's position

22  about the firearms, but also keep in mind that, according to

23  the documents prepared both by Mr. Lowers in the PSI and the

24  internal documents from the DEA, the state police, indicate

25  that the bulk of the weapons were found in the living room, in

6

1  a rear room of the house.  Only one gun was found in the loft

2  area, where Ms. Munnings and Mr. Hines were residing.  And that

3  gun was non-functional.

4      Also, just to note in the PSI, it's actually in the

5  addendum to the PSI, where I objected to a two-level increase

6  for possession, that the weapon merely has to be present and

7  connected to the offense.  I don't know that there was any

8  information during the course of this investigation which shows

9  that any of the weapons were connected to the offense.  There

10  was no evidence that anybody was threatened with any weapon in

11  any manner or reference to the collection of drug debt or

12  distribution of drugs.

13  In addition, Mr. Hines and Ms. Munnings were stopped

14  on a number of occasions. In fact, that's what led to the

15  arrest in Crawford County. At no time were any weapons seized

16  during the course of these traffic stops. The only connection

17  to the offense is just the mere presence of them being in the

18  household. They weren't toting the guns back and forth from

19  the house to the meth lab.

20  And, again, based upon the internal records that

21  were provided to us and also noted in the PSI, that would

22  specifically be on page 6, paragraph 16, the information

23  received from ATF that indicated that Hines had purchased or

24  obtained several weapons, including shotguns, rifles and

25  handguns from private individuals. Regardless of whether his

7

1  motive was to collect these items, there really wasn't anything

2  that placed Ms. Munnings in a position of collecting these long

3  guns and handguns. Again, her guilt is by association in this

4  case. She slept with the wrong guy. She hung out with the

5  wrong guy.  She was going out to produce meth, she had used

6  meth.

7           I don't feel that any sentence above 120 months in

8  this case would do any good in the way of punishment or

9  teaching her a lesson or respect for the law.  She gained

10 respect for the law, she understands what she has done is

11 wrong, and I believe 10 years would be sufficient for what

12 she's done, judge.  That's what I would ask.

13           THE COURT:  All right.  Does your client have

14 anything she wants to say?

15           MR. MISKO:  No, your Honor.

16           THE COURT:  Mr. Piccinini.

17           MR. PICCININI:  Your Honor, back when you sentenced

18 the defendant originally in November of 2004, the sentence of

19 140 months you imposed was appropriate.  It remains appropriate

20 today.

21           What is somewhat distant from the facts and

22 circumstances of this case, but at the time of the offense, the

23 laboratory that was seized at the residence of Mr. Hines and

24 Ms. Munnings, was the most significant size laboratory seized

25 to date in the area on clandestine methamphetamine

1  investigations.

2       Counsel talks about Ms. Munnings role, you recall

3  from the testimony in the course of this case, law enforcement

4  officers actually clandestinely watched as two individuals,

5  those individuals being identified as Mr. Hines and Ms.

6  Munnings, inside that tarp structure, actually engage in

7  actively manufacturing meth.  150 grams, essentially, of which

8  were found in the bedroom of the residence itself.

9       As far as counsel's arguments with regard to the

10 Sentencing Guidelines, you made a finding that the gun

11 enhancement applies.  The mandatory minimum is 120 months,

12 which he asks you to impose a sentence at.  You already made a

13 finding that the gun enhancement applies.  To sentence to 120

14 months would say you made that finding but you don't believe

15 that any increase in the sentence should apply.  The increase

16 in the sentencing under the guidelines is sound, it's wise,

17 there's a reason for it.  And to sentence to merely 120 months,

18 the sentence you imposed of 140 months was appropriate, it

19 remains appropriate today.

20          THE COURT:  All right.  Are Ms. Munnings appellate

21  rights circumscribed by the plea agreement in any respect?

22      MR. PICCININI:  I believe this is a pre Blakely plea

23  agreement, your Honor.  I see no limitation on her appellate

24  rights under the plea agreement itself.

25      THE COURT:  All right.  As I alluded to earlier, in

9

1  the wake of the recent decision in United_States_v._Booker, the

2  guidelines now of course are advisory or discretionary, as

3  opposed to mandatory.  And I'm required to consider various

4  factors under Section 3553(a)(2), which would include the

5  seriousness of the offense, to promote respect for the law, to

6  provide just punishment, adequate deterrence to criminal

7  conduct.  To protect the public from further crimes.  Providing

8  the defendant with necessary educational, vocational training,

9  medical care or correctional treatment.  And then, of course,

10  3553(a) further directs sentencing courts to consider other

11  factors, including the nature and the circumstances of the

12  offense; the history and characteristics of the defendant; the

13  kinds of sentences available; the need to avoid unwanted

14  sentencing disparities, etc.

15      In fashioning this sentence, I have carefully

16  considered the advisory guideline range, as well as the other

17  factors which I have just articulated.  And also reflected on

18  the reasons that I had imposed the original sentence.  Briefly,

19  it goes without saying that few drug crimes can be more serious

20  than meth.  It's clear to me that it's unfortunately powerfully

21  destructive and addictive.  And it is potentially extremely

22  dangerous to anyone in the vicinity of its manufacture.

23  Deterrence is important in a case like this, as well as

24  protection of the public.  Are you in a drug treatment program

25  right now?

10

1       THE DEFENDANT:  Yes, I am.

2       THE COURT:  How is that going?

3       THE DEFENDANT:  For less than a month I have been

4  attending a three-hour group on Monday, a three-hour group on

5  Wednesday.  One hour with the drug and alcohol counselor, Pam

6  Ryan, from Crawford County.

7       THE COURT:  All right.

8      MR. MISKO:  If I may, the program she's in, she's in

9   a county program because she hasn't been in the federal system

10  long enough to get into an intensive drug program.  She's doing

11  this on her own in the Crawford County jail.

12      THE DEFENDANT:  I'm not a client, I just go on my

13  own.

14      THE COURT:  All right.  Would you please stand up.

15      Pursuant to the Sentencing Reform Act of 1984, it is

16  the judgment of the court that the defendant, Kelly Elizabeth

17  Munnings, is hereby committed to the custody of the Bureau of

18  Prisons to be imprisoned for a term of 135 months.

19      Upon release from imprisonment, the defendant shall

20  be placed on supervised release for a term of five years.

21      Within 72 hours of release from the custody of the

22  Bureau of Prisons, the defendant shall report in person to the

23  probation office in the district to which the defendant is

24  released.

25      While on supervised release the defendant shall not

11

Case 1:04-cr-00002-SJM Document 60 Filed 08/23/2006 Page 13 of 17

1   commit another federal, state or local crime; shall comply with

2   the standard conditions of supervision recommended by the

3   Sentencing Commission and adopted by this court; and shall

4   comply with the following additional conditions.

5           The defendant shall not illegally possess a

6   controlled substance.

7           The defendant shall not possess a firearm or

8   destructive device.

9           The defendant shall participate in a program of

10  testing and, if necessary, treatment for substance abuse as

11  directed by the probation officer, until such time as the

12  defendant is released from the program by the probation

13  officer.

14           Further, the defendant shall be required to

15  contribute to the costs of services for any such treatment in

16  an amount determined by the probation officer but not to exceed

17  the actual cost.

18           The defendant shall submit to one drug urinalysis

19  within 15 days after being placed on supervision and at least

20  two periodic tests thereafter.

21           It is further ordered that the defendant shall pay

22  to the United States a special assessment of $100, which shall

23  be paid to the United States District Court Clerk forthwith.

24        The court finds that the defendant does not have the

25  ability to pay a fine, therefore, will waive a fine in this

12

1  case.  Actually, has she already paid her $100 in connection

2  with the original sentence?

3        THE DEFENDANT:  I haven't.

4        MR. MISKO:  I don't believe so, your Honor.

5        THE COURT:  Then that will be part of this sentence

6  as well.  Now, Ms. Munnings, you understand you have the right

7  to appeal this sentence I imposed today, but if you choose to

8  do that, you have to do so within 10 days; do you understand

9  that?

10       THE DEFENDANT:  Yes, I do.

11       THE COURT:  Okay.  Is there anything further on

12  behalf of your client?

13       MR. MISKO:  No, your Honor.

14       THE COURT:  Is there anything further from the

15  government?

16       MR. PICCININI:  No, your Honor.

17          THE COURT: All right, we're in recess.

18

19          (Whereupon, at 11:14 a.m., the Resentencing

20   proceedings were concluded.)

21

22                    - - -

23

24

25


                              13


1                C E R T I F I C A T E
                 _ _ _ _ _ _ _ _ _ _ _

2

3

4

5     I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12  _____

13  Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25